## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **VERNAL MORGAN,** | : | |
| Petitioner | : | |
| | : | **PRISONER** |
| **v.** | : | **Case No. 3:09cv744 (VLB)** |
| | : | |
| **COMMISSIONER OF CORRECTION** | : | **September 26, 2012** |
| **THERESA LANTZ,** | : | |
| Respondent | : | |

## RULING ON PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Vernal Morgan, an inmate confined at Northern Correctional Institution in Somers, Connecticut, brings this action *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his conviction on one count of robbery in the first degree and one count of conspiracy to commit robbery in the first degree. For the reasons that follow, the petition should be DENIED.

## I.   Standard of Review

The federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the Constitution or federal laws. 28 U.S.C. § 2254(a). A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

1

The federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Clearly established federal law is found in holdings, not dicta, of the Supreme Court at the time of the state court decision.  *See Carey v. Musladin*, 549 U.S. 70, 74 (2006).  The law may be a generalized standard or a bright-line rule intended to apply the standard in a particular context.  *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir.), *cert. denied*, 537 U.S. 909 (2002).

A decision is "contrary to" clearly established federal law where the state court applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002).  A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law, but unreasonably applies that law to the facts of the case, or refuses to extend a legal principle clearly established by the Supreme Court to circumstances intended to be encompassed by the principle.  *See Davis v. Grant*, 532 F.3d 132, 140 (2d Cir. 2008), *cert. denied*, ___ U.S. ___, 129 S. Ct. 1312 (2009).  The state court decision must be more than incorrect; it also must be objectively unreasonable which is a substantially higher standard.  *See Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

2

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct.  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1); *Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011) (standard for evaluating state-court rulings where constitutional claims have been considered on the merits and which affords state-court rulings the benefit of the doubt is highly deferential and difficult for petitioner to meet).  In addition, the federal court's review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.  *See Id.*

II.    <u>Procedural History</u>

In late May 2001, New Britain police officers arrested the petitioner and charged him with one count of  robbery in the first degree in violation of Connecticut General Statutes 53a-134 and one count of conspiracy to commit robbery in the first degree in violation of 53a-48 in connection with the robbery of a Subway restaurant on May 29, 2001.  In July 2001, the petitioner was charged with one count of robbery in the first degree in violation of Connecticut General Statutes 53a-134 and one count of conspiracy to commit robbery in the first degree in violation of 53a-48 in connection with the robbery of a Blimpie's sub shop on April 11, 2001.  A judge subsequently consolidated the cases for trial.  On October 8, 2002, in the Connecticut Superior Court for the Judicial District of Hartford at New Britain, a jury convicted the petitioner of all four counts.  On

3

January 6, 2003, a judge sentenced the petitioner to a term of imprisonment of thirty-four years.

The petitioner appealed his conviction on the following grounds: (1) there was insufficient evidence for the jury to conclude, beyond a reasonable doubt, that he was the gunman in the robbery of the Blimpie's sub shop and (2) the procedure used by the police to identify him as the individual who robbed the Subway sandwich shop was unnecessarily suggestive and not reliable in violation of his due process rights under the United States and Connecticut Constitutions. *See State v. Morgan*, 274 Conn. 790, 877 A.2d 739 (2005).   On August 2, 2005, the Connecticut Supreme Court affirmed the judgment of conviction. *See id.* at 806, 877 A.2d at 749.

In April 2004, the petitioner filed a petition for writ of habeas corpus in state court alleging that his trial attorney rendered ineffective assistance counsel when he failed to challenge the show-up procedure that was used by the police to identify him as the perpetrator of the robbery of the Subway restaurant.  On November 2, 2006, following an evidentiary hearing, a Connecticut Superior Court judge denied the petition. *See Morgan v. Warden*, No. CV054000742S, 2006 WL 3317693 (Conn. Super. Ct. Nov. 2, 2006).  On May 27, 2008, the Connecticut Appellate Court dismissed the petitioner's appeal of the decision denying his habeas petition. *See Morgan v. Commissioner of Correction*, 108 Conn. App. 901, 947 A.2d 19 (2008) (per curiam).  On September 10, 2008, the Connecticut Supreme Court denied the petition for certification to appeal from the decision of

4

the Connecticut Appellate Court's decision.  *See Morgan v. Commissioner of Correction*, 289 Conn. 915, 957 A.2d 878 (2008).  In May 2009, the petitioner commenced this action challenging his conviction on three grounds.

III.    <u>Discussion</u>

The petitioner asserts three grounds for relief: (1) there was insufficient evidence for the jury to conclude, beyond a reasonable doubt, that he was the gunman in the robbery of the Blimpie's sub shop; (2) the procedure used by the police to identify him as the individual who robbed the Subway sandwich shop was unnecessarily suggestive and not reliable in violation of his due process rights under the United States and Connecticut Constitutions and (3) trial counsel was ineffective in failing to challenge the show-up procedure that was used by the police to identify him as the perpetrator of the robbery of the Subway sandwich shop.

A.    <u>Insufficient Evidence on Charges of Robbery and Conspiracy to Commit Robbery of the Blimpies Sub Shop</u>

In the first ground for relief, the petitioner contends that the state presented insufficient evidence to enable the jury to conclude beyond a reasonable doubt that he was the perpetrator of the robbery of the Blimpie's sub shop on April 11, 2001.  "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358,

5

364 (1970).  Federal courts, however, do not relitigate state trials and make independent determinations of guilt or innocence.  *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).  When a petitioner challenges the sufficiency of the evidence used to convict him, the court must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  In discussing this standard, the Supreme Court  emphasized "the deference owed the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency [of the evidence] review."  *Wright v. West*, 505 U.S. 277, 296 (1992).

In analyzing this claim, the Connecticut Supreme Court applied state cases with holdings that mirror the applicable federal law.  Because the Connecticut Supreme Court applied the correct legal principles, the decision is not contrary to clearly established federal law.  *See Early v.* Packer, 537 U.S. 3, 8 (2002) (holding that state court need not be aware of nor cite relevant Supreme Court cases as long as the reasoning and decision do not contradict applicable law); *Lurie v. Wittner*, 228 F.3d 113, 127 (2d Cir. 2000) (ruling is contrary to established federal law when state court applies law contradicting Supreme Court precedent), *cert. denied*, 532 U.S. 943 (2001).  Thus, the court considers whether the analysis of the Connecticut Supreme Court was an unreasonable application of federal law.

The Connecticut Supreme Court determined that the jury could have found the following facts with regard to the robbery of the Blimpie's sub shop.  During

6

the evening of April 11, 2001, Holly Broderick was working at the Blimpie's sub shop located at 1537 Stanley Street in New Britain.   At 11:00 p.m., two men came into the shop and demanded that Ms. Broderick give them all of the money from the cash register.  Ms. Broderick was behind the counter and was able to get a good look at the faces of both men before they pulled down masks to cover their faces.   Ms. Broderick observed that both men were black.  In addition, one of the men was carrying a handgun, was wearing a blue sweatshirt, black gloves and large black chunky boots, had a distinctive shape to his mouth and color to his lips and had deep set eyes.

Ms. Broderick ran to the back room of the store and attempted to call 911. Before she could complete the call, gunman entered the back room, forced her to return to the cash register and demanded that she open the register.   After she opened the register, the gunman removed all the cash from it and handed it to the other masked man.   The gunman repeatedly requested that Ms. Broderick open the store's safe, but Ms. Broderick responded that she did not have access to the safe because she was not a manager.  The two men then left the shop.

Ms. Broderick called 911 again and New Britain Police Officer Bryant Pearson arrived at the shop and took Ms. Broderick's written statement.   Shortly after this incident, Ms. Broderick visited the New Britain police station to review photographs in an attempt to identify the two men who had committed the robbery.   She concluded that the two men who committed the robbery were not portrayed in any of the photographs that she reviewed.  On May 30, 2001, she

7

visited the New Britain police station to review a photographic array of eight potential suspects with similar features.   No one at the police department informed Ms. Broderick that the department had a suspect in custody.  Detective Thomas Steck had arranged the photo array in accordance with identification procedures routinely used by the police department during the course of its criminal investigations.   Upon viewing the photographs, Ms. Broderick identified the petitioner as the man who had threatened her at gunpoint during the robbery of the Blimpie's sub shop on April 11, 2001.

Ms. Broderick informed Detective Steck that she was completely confident that she had accurately identified the man who had committed the robbery at Blimpie's.  She provided a written statement and circled the petitioner's photograph to indicate her identification of him as the assailant in the robbery. At trial, Ms. Broderick testified that she was completely sure of her identification of the petitioner as the man who had robbed the store at gunpoint.   *See Morgan*, 274 Conn. at 794-97, 877 A.2d at 743-45.

To establish that the petitioner committed the crime of robbery in the first degree,  the state was required to prove that the petitioner: (1) cause[d] serious physical injury to" a non-participant in the robbery; or "(2) [was] armed with a deadly weapon; or (3) use[d] or threaten[ed] the use of a dangerous instrument; or (4) display[ed] or threaten[ed] the use of what [petitioner] represent[ed] by his words or conduct to be a pistol, revolver . . .  or other firearm" in the course of committing a robbery or fleeing from the commission of a robbery as defined in

8

Conn. Gen. Stat. § 53a-133.  Conn. Gen. Stat. 53a-134(a)(4).  The petitioner argued before the Connecticut Supreme Court that the state failed to present sufficient evidence to show that he was the perpetrator of the robbery of the Blimpie's shop.   Specifically, the petitioner argued that Broderick's identification of him as the perpetrator of the robbery on the basis of the color and shape of his lips was logically impossible because the perpetrator's face was covered by a mask during the robbery.   In addition, the other evidence including the surveillance tape and statements by Broderick did not contain evidence that he was the perpetrator.

At trial, the prosecution presented the following evidence.  Broderick testified that she had the opportunity to briefly observe the face of the gunman as he was coming into the restaurant before he pulled down his mask.  Although her observation was brief, Broderick testified that she got a good look at the gunman's face.  Broderick also testified that there was no question in her mind that the petitioner was the gunman in the robbery of the Blimplie's restaurant on April 11, 2001.

Broderick conceded that the she went down to the New Britain Police Department on two occasions to look at photographs in an attempt to identify either of the individuals who had robbed the Blimpie's shop.  On the first occasion, she viewed over 100 photographs but did not see anyone that looked like either of the perpetrators of the robbery.  On the second occasion, the police detective again asked her to view photographs to determine if she recognized

either of the perpetrators.  The detective did not inform Broderick that he had a suspect in custody at the time or otherwise target only the petitioner.   Broderick was able to positively identify the petitioner as the assailant who carried the gun during the robbery.   Broderick also confirmed Detective Steck's testimony indicating that he did not influence her selection of the petitioner's photograph. Both at the time she picked the petitioner's face out of a photographic line-up at police headquarters and at trial, Broderick testified that she was absolutely certain of her identification of the petitioner as the armed perpetrator of the robbery in the Blimpie's restaurant.  *See* Resp't's Mem., App. H, Transcript of 10/2/02 at 234-70.

Broderick also testified that the petitioner was 5"11", approximately 18 to 20 years old, thin, black, had a distinctive chin shape and deep-set eyes and was wearing a blue-hooded sweatshirt, black pants, chunky-looking black boots and leather gloves and was carrying a handgun.  *See id.* at 234, 243.   In addition, Broderick noticed that the distinctive shape of the petitioner's mouth and the coloration of his lips because he was biting his lips as he was coming through the door into the shop.  *See id.* at 247, 253-56, 263.   The prosecutor introduced the videotape of the robbery and Broderick identified herself as well as the petitioner in the videotape.

Viewing all of the evidence presented to the jury in the light most favorable to the prosecution and the fact that the jury was entitled to believe the testimony of Broderick who was an eye witness to the robbery, the Connecticut Supreme

Court concluded that the jury reasonably could have determined that Broderick's identification was sufficient to satisfy the state's burden of proof on the identity of the perpetrator of the robbery and could support a rational determination that the petitioner was guilty beyond a reasonable doubt.

The Connecticut Supreme Court's determination that the state had presented sufficient evidence to support the jury's conclusion that the petitioner was the perpetrator of the Blimpie's robbery was not an unreasonable application of established federal law or based upon an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). The petition for a writ of habeas corpus is DENIED on this ground.


**B.    Ineffective Assistance of Counsel**

In the third ground for relief, the petitioner asserts that trial counsel was ineffective by failing to object to the unnecessarily suggestive and unreliable show-up identification procedure used by the police to identify him as the gunman in the Subway restaurant robber.   The petitioner raised this claim in his state habeas petition.

An ineffective assistance of counsel claim is reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail, the petitioner must demonstrate, first, that counsel's conduct was below an objective standard of reasonableness established by prevailing professional norms and, second, that this deficient performance caused prejudice to him. *Id.* at 687-88. In

light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688–689.  The court evaluates counsel's conduct at the time the decisions were made, not in hindsight, and affords substantial deference to counsel's decisions.  *See Rompilla v. Beard*, 545 U.S. 374, 381 (2005).  Because counsel is presumed to be competent, the petitioner bears the burden of demonstrating unconstitutional representation.  *See United States v. Cronic*, 466 U.S. 648, 658 (1984).

To satisfy the prejudice prong of the *Strickland* test, the petitioner must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different;" the probability must "undermine confidence in the outcome" of the trial.  *Strickland*, 466 U.S. at 694.  To prevail, the petitioner must demonstrate both deficient performance and sufficient prejudice.  *See id.* at 700.  Thus, if the court finds one prong of the standard lacking, it need not consider the remaining prong.

In analyzing this claim, the state court applied the standard established in *Strickland*.  Because the state court applied the correct legal standard, the state court decision cannot meet the "contrary to" prong of section 2254(d)(1).  The court will consider the last reasoned state court decision to determine whether the decision is an unreasonable application of federal law.  *See Ylst v.*

*Nunnemaker*, 501 U.S. 797, 804 (1991).  Here, the court reviews the Connecticut Superior Court's decision denying the petition for writ of habeas corpus.

Trial counsel and the petitioner testified at the state habeas hearing.  The Connecticut Superior Court judge found the following facts related to the petitioner's claim that trial counsel was ineffective for failing to challenge the show-up identification procedure used to identify him as the assailant in the Subway restaurant robbery.

> At trial Paradis testified that on May 29, 2001, at approximately 5:40 p.m., she was working at the Subway sandwich shop in New Britain, Connecticut. She was working at the front counter near one of the large side windows in the restaurant. At that time, a car drove very closely by Paradis' window and at an extremely slow rate of speed. Although Paradis was otherwise engaged, the location and speed of the car drew her attention and so she turned to stare at it. As the car continued to drive by, the driver's side was approximately twelve inches from the store window and the driver was staring full face at Paradis. Paradis noticed that the car was small, blue in color and had "bondo"[1] on the left front panel or driver's door. Paradis also noted that there were two black males in the vehicle and the driver was wearing a blue hooded sweatshirt. Paradis watched as the car drove toward the rear of the sandwich shop and then Paradis went back to work. A few minutes later the driver and his companion entered the store. The driver had put a black nylon mask over his face and the sweatshirt hood over his head. The driver came over to Paradis' location, pointed a gun at her and demanded that she give him the money from the cash register. Although she was standing next to the cash register, Paradis froze and was unable to comply with the driver's demand. Thereafter, two coworkers, Salene Baig and Mirza Baig ran from the back room and one of them opened the cash drawer. Salene Baig removed the paper currency from the cash drawer and wrapped it in a piece of sandwich paper printed with the Subway logo. Mirza Baig then handed the driver this bundle and the perpetrators fled. All the while,

---

[1] Auto body repair shops and others use "bondo" - an off white putty like substance- to fill holes in the sheet metal of a car.

Paradis remained at the register and nearby the driver. The driver was in Paradis' presence for approximately five minutes.

Once the perpetrators fled, Mirza Baig called "911" as Paradis ran to the front door and locked it. From her vantage point at the front door, Paradis watched the blue car with "bondo" drive out of the Subway parking lot onto Hartford Road and in the direction of Route 9. Although due to the location of nearby buildings, Paradis did not see the car actually enter Route 9, she had enough of a view of the path of the car along Hartford Road to determine that it had not continued on Hartford Road past the Route 9 entrance ramp.[2]

Baig's "911" call was relayed by New Britain police dispatch to the regional police "hotline" where it was received by, *inter alia,* West Hartford police dispatch which, in turn, relayed the particulars to all West Hartford police units. As a result Officer Eric Rocheleau entered I-84 eastbound and positioned himself in the breakdown lane to watch for a blue Chevy Corsica with "bondo" on one side. Three to five minutes after taking up his position, Rocheleau observed the suspect vehicle drive by and began to follow it. A high speed chase ensued as the Corsica exited I-84 onto the streets of Hartford. With Rocheleau in pursuit, two occupants jumped out of the car on Evergreen Avenue and fled on foot in opposite directions. Rocheleau chased the passenger and apprehended him several blocks away. At trial petitioner was identified by Rocheleau as the individual who exited the passenger side of the Corsica.[3]

Approximately twenty to forty-five minutes after the robbery, Paradis and Mirza Baig were transported by New Britain police to Sisson Avenue in Hartford to see if they recognized an individual being detained there. Upon arrival at Sisson Avenue, Paradis got out of the police car and walked to a

---

[2] Paradis also observed that the vehicle did not enter the driveway to the Chili's restaurant across the street from the Subway, but rather drove right by that location. In his confession to the New Britain police, petitioner claimed that he was inside Chili's at the time of the robbery and that the perpetrators picked him up at Chili's before the car entered Route 9.

[3] In his brief, petitioner argues that Paradis' identification of petitioner is unreliable because she identified him as the driver of the car while Rocheleau identified him as the passenger.  By this argument petitioner assumes that petitioner was the driver of the Corsica both before and after the robbery.  There is, however, no evidence in support of such a conclusion.  At trial Paradis identified petitioner as the driver before the robbery.  Paradis did not testify to, and was never asked, which perpetrator she observed operating the car after the robbery.  Thus, Pardis' testimony does not conflict with Rocheleau's testimony.

nearby parking lot where she observed an individual standing behind a West Hartford police vehicle. Paradis immediately recognized this individual as the driver of the blue car at the Subway. Paradis testified that she was "positive" that the detained individual was the perpetrator of the robbery and that her level of certainty was "very high." Thereafter, Paradis was brought to another location several streets away and asked to look at a car. She immediately recognized the car as the blue car with "bondo" that had been involved in the robbery. She also recognized a glove and a black mask found on the front seat of the blue car. As with her identification of petitioner, she was positive that the car and its contents were involved in the robbery. On cross examination, Paradis insisted that she was "one-hundred percent" sure of her identification of petitioner as the perpetrator of the robbery.

Through both direct and cross examination of Paradis' testimony and the testimony of other witnesses, the jury was made aware that petitioner was not wearing a blue hooded sweatshirt when Paradis identified him and that no such sweatshirt was found in the Corsica.[4] Despite this discrepancy in petitioner's appearance, Paradis was certain that petitioner was the perpetrator. Additionally the police officer who conducted the identification procedure testified that Paradis exhibited absolute certainty in her identification of petitioner as the perpetrator.

Mirza Baig also testified at the trial and was cross examined about his identifications. At the commencement of the robbery, Baig was in the rear of the store. He first observed the perpetrator with the gun as the perpetrator was standing next to the cash register and pointing a gun at Paradis. Baig came from the rear of the store and handed the proceeds from the cash register to the perpetrator. As the perpetrators fled, Baig observed the perpetrator's car as it fled the scene. Baig was also transported to Sisson Avenue to participate in the identification procedure. Baig testified that because the

---

[4] Petitioner's sweatshirt, the gun used in the robbery and the distinctive Subway wrapping paper containing the money were never found. The sum of $203.00 in various denominations was, however, located on petitioner's person. These discrepancies were explained by the state, at least in part, by Rocheleau's testimony that when he returned to the Corsica approximately fifteen minutes after apprehending petitioner, people on the scene indicated that in his absence several people had entered the Corsica and removed items from it.

perpetrator had worn a mask, he was not able to identify petitioner as the perpetrator. Nonetheless, Baig testified that petitioner's height and weight were consistent with that of the perpetrator. Baig was also able to positively identify the car as the blue Corsica with bodywork on the left side that had been used in the robbery.

At trial and in his confession, petitioner admitted to being the owner of the blue Corsica which had run from the police. While denying involvement in the robbery, petitioner admitted that at the time of the robbery, he was present at the Chili's restaurant across the street from the Subway. Additionally in his testimony, he gave inconsistent and varying versions of the events before and after the robbery.

Other evidence showed that when petitioner was taken into custody in Hartford, he was in possession of $203.00 in various denominations including twenties, tens, fives and ones. This sum is consistent with the amount and type of currency which Subway routinely carries in its cash register.

*Morgan*, 2006 WL 3317693, at **2-4.

Based on the testimony of Attorney Chong and the petitioner, the Connecticut Superior Court judge found the following facts related to Attorney Chong's representation of the petitioner before and during trail.  Attorney Chong had been practicing law for approximately nine years prior to his representation of the petitioner and had worked in the State of Connecticut Office of the Public Defender since 1994.  During that time, he had tried forty-one cases, including thirty felony cases.

The court appointed Attorney Chong to represent the petitioner in connection with charges stemming from the Subway and Blimplie's sandwich shop robberies.  Attorney Chong first met the petitioner in May 2001, following his arrest for the Subway robbery.  At the first meeting, Attorney Chong elicited

16

information from the petitioner concerning his background, including the fact that the petitioner was on probation for a prior robbery.  Attorney Chong then reviewed the state's attorney's files and obtained copies of police report and witness statements pertaining to the robberies of the Subway and Blimpie's Sandwich Shops.  Attorney Chong reviewed the police reports and statements and discussed the contents of these documents with the petitioner.  In addition, Attorney Chong met with the petitioner to discuss any potential defenses to the charges and whether the petitioner wanted to enter into a plea bargain with the state or whether the petitioner wanted to proceed to trial.

Attorney Chong opined that the state had a strong case against the petitioner with regard to the Subway robbery charges.  The Connecticut Superior Court judge concluded that no evidence had been presented during the habeas trial which would lead her to a contrary conclusion with regard to the strength of the state's case against the petitioner.

At some point, Attorney Chong received a pretrial plea offer.  In exchange for a guilty plea by the petitioner to two counts of robbery in the first degree and the petitioner's admission to violating probation, the petitioner would receive a total effective sentence of twenty years, execution suspended after twelve years and five years of probation.  After a discussion with the petitioner regarding the plea offer, the petitioner rejected the offer and chose to go to trial.   A jury subsequently convicted the petitioner of both counts relating to the Subway robbery and both counts relating to the Blimpie's robbery.

After reviewing the police reports and witness statements, Attorney Chong believed that the only potential weakness in the state's case involving the Subway robbery was the identification of the petitioner by the two eyewitnesses. Attorney Chong acknowledged that an argument could be made that the one-to-one show-up between the petitioner and the two eyewitnesses was suggestive. He concluded, however, that the trial judge would likely find the witnesses' identification of the petitioner to be reliable when considered under the totality of the circumstances and would have admitted the pretrial identification evidence. Thus, Attorney Chong chose not to pursue a motion to suppress the show-up prior to trial.  Attorney Chong correctly described the petitioner's burden in proving that the witness identification evidence should be suppressed.

Attorney Chong related that the petitioner was not cooperative in preparing for trial.  The petitioner would not provide Attorney Chong with the name of the other individual who participated in the robbery of the Subway shop and initially insisted on testifying at trial, but would not provide Attorney Chong with the substance of his proposed testimony.  During the trial, the petitioner became more cooperative and offered information regarding the police reports and witness statements that enabled Attorney Chong to effectively cross-examine witnesses, including the eyewitnesses to the robbery.  *See id.*, at **1-2.

The Superior Court judge found the testimony of Attorney Chong extremely credible and the testimony of the petitioner "to be generally not credible." *Id.*, at *1.  The Connecticut Superior Court credited trial counsel's testimony at the

18

habeas hearing regarding his decision to focus on challenging the identification evidence through cross-examination of the eyewitnesses at trial because he believed that it was unlikely that the trial judge would grant a motion to suppress the identification evidence.  The habeas judge noted that this was a tactical decision in view of the fact that a hearing on the motion to suppress the identification evidence would have revealed to the prosecutor the method and strategy of Attorney Chong's challenge to the weak portions of the statements by the eyewitnesses to the Subway robbery.  *See id.,* at *5.  By giving the prosecutor advance knowledge of his trial strategy, the prosecutor would have had the opportunity to develop a counter strategy to use at trial.   The habeas judge determined that counsel had adopted a legitimate strategy to attack the eyewitness identifications of the petitioner and had implemented the strategy competently.  *See Rompilla*, 545 U.S. at 381 (court affords "a heavy measure of deference to counsel's judgments"). Thus, the petitioner had not overcome the presumption that "counsel's conduct [fell] within the wide range of reasonable professional assistance" and, under the circumstances, that conduct, "might be considered sound trial strategy." *Strickland*, 466 U.S. at 688-89.  Accordingly, the habeas judge concluded that the petitioner had not met the deficient performance prong of the ineffective assistance of counsel standard.

The state habeas judge's factual findings and credibility determinations are "presumed to be correct," and the petitioner has the "burden of rebutting [that] presumption of correctness by clear and convincing evidence."  28 U.S.C. §

2254(e)(1).  The petitioner has offered insufficient evidence to rebut the habeas judge's factual determinations.  This court concludes that the Connecticut Superior Court properly applied the *Strickland* standard in reviewing the petitioner's ineffective assistance of counsel claim and determining that trial counsel's decision not to move to suppress the eyewitness identifications, but rather to challenge the identifications on cross-examination, was a strategic choice and not the result of mere negligence or incompetence.  *See Cullen*, ___ U.S. at ___, 131 S. Ct. at 1406 (noting that the "wide latitude counsel must have in making tactical decisions" and affirming that "[b]eyond the general requirement of reasonableness, 'specific guidelines are not appropriate'") (quoting *Strickland*, 466 U.S. at 688-89).   Thus, counsel's conduct fell "within the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.   The petitioner has not shown that the Connecticut Superior Court's decision was an unreasonable application of *Strickland* to the facts of the case.

Because the habeas court concluded that the petitioner had not met the deficient performance prong of *Strickland*, it was not required to determine whether the prejudice prong of *Strickland* had been met.  *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test and need not address both prongs if the defendant fails to meet one of the prongs).  The habeas judge acknowledged this fact, but chose to also consider whether the petitioner had met the prejudice requirement of the *Strickland* test.  *Morgan*, 2006 WL 3317693, at **5-7.

The judge determined that the petitioner had not demonstrated that had counsel filed a motion to suppress, the trial judge would have granted the motion and the outcome of the trial would have been different. The judge reasonably applied Supreme Court law and concluded that the although the pretrial show-up procedure may have been suggestive, it was not unnecessarily suggestive because of the existence of exigent factors and the circumstances surrounding the out-of-court identification. *See id.*, at **6-7. Further, even assuming the show-up procedure was unduly suggestive, the state court reasonably determined from the totality of the circumstances that the eyewitnesses had a sufficient independent basis for making a reliable trial identification. Because the show-up procedure was not unduly suggestive and the witness identifications were independently reliable, the trial judge would have denied any motion to suppress filed by counsel prior to trial. *See id.*, at *7. Thus, the habeas judge concluded that the petitioner had failed to demonstrate any prejudice as a result of counsel's decision not to file a motion to suppress the out-of-court identifications. *See id.*, at *8.

The petitioner has presented no evidence to overcome the presumption of correctness that is attributed to the factual findings of the state habeas judge. *See Rice v. Collins*, 546 U.S. 333, 338-39 (2006); 28 U.S.C. § 2254(e)(1). The state court determination that the petitioner had suffered no prejudice from counsel's decision to forgo filing a motion to suppress the out-of-court identifications prior

to trial was not an objectively unreasonable application of *Strickland*.
Accordingly, the habeas petition is DENIED on this ground.

C.    Suggestive Show-Up Procedure

The petitioner's second claim challenges the show-up procedure used to
identify him as the armed assailant in the Subway robbery as unnecessarily
suggestive and unreliable and violative of his Fourteenth Amendment due
process rights.  The respondent argues that this claim should be dismissed as
having been procedurally defaulted because the Connecticut Supreme Court
declined to review the merits of the claim based on an adequate and independent
state procedural rule.

Under the procedural default doctrine, a federal court will not review the
merits of claim raised in a habeas petition, including a constitutional claim, if the
state court declined to address the claim because the prisoner failed to meet a
state procedural requirement and the state court decision is based on
independent and adequate procedural grounds.   *See Walker v. Martin*, ___ U.S.
___, 131 S. Ct. 1120, 1127-28 (2011) (citations omitted).  A state rule or
requirement must be firmly established and regularly followed by the state in
question to qualify as an adequate procedural ground.  *See Beard v. Kindler*,  558
U.S. 53, 130 S. Ct. 612, 618 (2009)(internal quotation marks and citation omitted).
A state court decision will be "independent" when it "fairly appears" to rest

primarily on state law.  *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006) (citation omitted).

Exceptions to the doctrine barring procedurally defaulted claims from being heard in federal court exist.  A state prisoner can obtain federal habeas review despite having defaulted on his federal claim in state court pursuant to an independent and adequate state procedural rule, if he can demonstrate cause for the default and actual prejudice resulting from the default or he can show that failure to consider the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

On direct appeal, the Connecticut Supreme Court noted that the petitioner had also raised a claim challenging the show-up procedure used by the police to identify him as the armed assailant in the Subway robbery.  *See Morgan*, 274 Conn. at 795, n.5, 877 A.2d at 743, n.5.   The petitioner acknowledged at oral argument that he had not raised this issue at trial.  The Connecticut Supreme Court noted that under *State v. Golding*, 213 Conn. 233, 567 A.2d 823 (1989), a defendant may raise an unpreserved claim on appeal if four conditions are met.[5] *See id.*  The court noted that the petitioner had not asserted an objection to the admission of the identification evidence, had not requested a hearing and had not filed a motion to suppress or any other motion directed to the admissibility of the evidence.  As a result, the trial court did not make any initial findings of fact or

---

[5]  The four conditions are as follows: (1) the record of the trial court is sufficient to review the claimed error; (2) the claim asserts a violation of a fundamental right and is of constitutional magnitude; (3) it is clear that a violation of the constitution exists and the violation resulted in a deprivation of the defendant's right to a fair trial; and (4) if the claim is subject to a harmless error review, the state neglected to show harmlessness of the alleged violation of the defendant's constitutional rights beyond a reasonable doubt.  *See id.* at 239-40, 567 A.2d at 827.

reach any legal conclusions concerning the suggestiveness or reliability of the identification procedure as applied to the facts of the case.  The Court concluded that the petitioner's due process claim was unpreserved and there  was an inadequate record for review of the claim under the first prong of *Golding*. Accordingly, the court declined to review the claim on appeal.  *See id.*

It is evident that the Connecticut Supreme Court expressly relied on a state procedural rule to decline to review the petitioner's claim.  Furthermore, the procedural rule was definite, well-established and regularly applied at the time of the Connecticut Supreme Court's decision on the petitioner's unpreserved claim. *See State v. Gay*, 87 Conn. App. 806, 812, 867 A.2d 26, 29 ("Because the defendant has failed to provide us with a record adequate to review his claim [of constitutional error], this claim fails under the first prong of *Golding*."), *cert. denied*, 273 Conn. 930, 873 A.2d 999 (2005)*; State v.* Carignan, 85 Conn. App. 187, 191, 856 A.2d 484, 486-87 (2004) (claim fails to meet first prong of *Golding* because record inadequate for review); *State v. Vines*, 71 Conn. App. 751, 758-59, 804 A.2d 877, 882-83 (declining to address defendant's unpreserved constitutional claim under first prong of *Golding* because "record is inadequate for our review of this claim"), *cert. granted in part on other grounds*, 261 Conn. 943, 808 A.2d 1137 (2002); *State v. Vasquez*, 68 Conn. App.194, 222, 792 A.2d 856, 873 (2002) ("The [constitutional challenge to jury array] . . . fails under *Golding*'s first prong because the record is not adequate for review." ); *State v. Perry*, 48 Conn. App. 193, 709 A.2d 564 (1998) ("We do not view the record as adequate to

satisfy the first prong of *Golding*."); *State v. Ortiz*, 47 Conn. App. 333, 342, 705 A.2d 554, 559 (1997) (concluding defendant had not satisfied first prong of *Golding* because he failed to provide adequate record for review of claim of improper denial of motion to suppress out-of-court identification by witness).

Because the Connecticut Supreme Court made an adequate and independent finding that the petitioner had procedurally defaulted on his claim by failing to provide an adequate record for review of the claim on appeal, the court cannot review the claim unless the petitioner can show "cause and prejudice" or "a fundamental miscarriage of justice." *Id.* at 854 (internal citations omitted).

To establish cause to excuse procedural default, the petitioner must identify "some external impediment preventing counsel from constructing or raising the claim." *Murray v. Carrier*, 477 U.S. 478, 492 (1986). Such factors include interference by state officials impeding compliance with state rules or a showing that the factual or legal basis for a claim was not reasonably available to defense counsel. *See McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991). The petitioner has failed to allege any external cause to excuse the procedural default by his attorney.

Although ineffective assistance of counsel can constitute cause for failing to comply with a State's procedural rule, "[a]ttorney error short of ineffective assistance of counsel, [however], does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial." *Murray*, 477 U.S. at 488, 492. A claim of ineffective assistance must be raised in a state court

proceeding as an independent claim before a petitioner may attempt to use it  to

establish cause for a procedural default."  *See id.* at 489.   Thus, a petitioner must

have properly presented and exhausted the ineffective assistance of counsel

claim in state court before it will be considered as cause to excuse procedural

default.  *See Edwards*, 529 U.S. at 453.

The petitioner did raise a claim of ineffective assistance of trial counsel in

state court.   As indicated above, the Connecticut Superior Court concluded that

the petitioner had not met his burden of demonstrating that trial counsel had

performed below the objective standard of reasonableness established by

prevailing professional norms or that counsel's deficient performance caused

prejudice to him.  The petitioner has raised that same claim of ineffective

assistance of counsel in the present petition.  The Court has reviewed the

petitioner's claim of ineffective assistance of trial and did not find that counsel's

representation was constitutionally ineffective.  Because the petitioner has not

shown that counsel's performance fell below an objective standard of

reasonableness, he cannot show cause to excuse his procedural default of the

claim that the show-up procedure used to identify him as the armed assailant in

the Subway robbery was unnecessarily suggestive and unreliable.   Where a

petitioner has not shown cause, the court need not address the prejudice prong

of the procedural default standard.  *See* McCleskey, 499 U.S. at 501.

Nor has the petitioner shown that failure to consider this claim would result

in a fundamental miscarriage of justice, that is, "the conviction of one who is

actually innocent." *Murray*, 477 U.S. at 496. To meet this exception, the petitioner must present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Schlup v. Delo*, 513 U.S. 298, 316 (1995). To establish a credible claim of actual innocence, a petitioner must support his claim "with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eye-witness accounts, or critical physical evidence-that was not presented at trial." *Id.* at 324. Actual innocence requires a showing of factual innocence, not "legal innocence." *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). The petitioner has not alleged that he is actually innocent. Nor has he submitted any evidence to support a claim that he was innocent of the charges for which he was convicted. Because the petitioner has not shown cause or a fundamental miscarriage of justice, the claim of error on the part of the trial judge set forth in ground three of the petition is procedurally defaulted, cannot be reviewed, and is DENIED.

## V.   Conclusion

The petition for writ of habeas corpus [Doc. #1] is DENIED. The Clerk is directed to enter judgment in favor of the respondent and close this case.

The court concludes that petitioner has not shown that he was denied a constitutionally or federally protected right. Thus, any appeal from this order would not be taken in good faith and a certificate of appealability will not issue.

**IT IS SO ORDERED.**
_____/s/_____
**Vanessa L. Bryant**
**United States District Judge**

**Dated at Hartford, Connecticut:  September 26, 2012.**